1  ROB BONTA, State Bar No. 202668
Attorney General of California
2  MYUNG J. PARK, State Bar No. 210866
Supervising Deputy Attorney General
3  BENJAMIN P. LEMPERT, State Bar No. 344239
DAVID M. MEEKER, State Bar No. 273814
4  JONATHAN A. WIENER, State Bar No. 265006
M. ELAINE MECKENSTOCK, State Bar No. 268861
5  Deputy Attorney General
 1515 Clay Street, 20th Floor
6  Oakland, CA  94612-0550
 Telephone:  (510) 879-0299
7  Fax:  (510) 622-2270
 E-mail:  Elaine.Meckenstock@doj.ca.gov
8  *Attorneys for Defendant Steven S. Cliff, in his
official capacity*

9

IN THE UNITED STATES DISTRICT COURT

10

FOR THE EASTERN DISTRICT OF CALIFORNIA

11

SACRAMENTO DIVISION

12

13

| | |
|---|---|
| **CALIFORNIA TRUCKING ASSOCIATION,** | 2:23-cv-02333-TLN-CKD |
| Plaintiff, | |
| v. | **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS** |
| **STEVEN S. CLIFF, in his official capacity, and DOES 1 through 25, inclusive,** | Dept: 2, 15th Floor<br>Judge: Hon. Troy N. Nunley<br>Trial Date: Not Set |
| Defendants. | Action Filed: October 16, 2023 |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

      I.     The Court Lacks Jurisdiction Over CTA's CAA Section 209 Claim ..................... 1

      II.    All Claims against the 2036 Sales Requirement Should Be Dismissed ................. 2

      III.   CTA's Claim under CAA Section 246 Should Be Dismissed ................................ 3

      IV.   CTA's F4A Claim Should Be Dismissed ............................................................... 4

      V.    CTA's Due Process Claim Should Be Dismissed .................................................. 6

      VI.   CTA's Dormant Commerce Clause Claim Should Be Dismissed ......................... 9

CONCLUSION .................................................................................................................. 10

1

**TABLE OF AUTHORITIES**

2

<u>Page</u>

3

**CASES**

4

*Amer. Trucking Ass'ns, Inc. v. Los Angeles*
    559 F.3d 1046 (9th Cir. 2009)............................................................................................ 5

5

6

*Ass'n of Am. Railroads v. Randolph*
    No. 23-CV-01154-DJC-JDP, 2024 WL 664359 (E.D. Cal. Feb. 16, 2024) ........................... 9

7

*Ass'n of Am. Railroads v. S. Coast Air Quality Mgmt. Dist.*
    622 F.3d 1094 (9th Cir. 2010)......................................................................................... 4, 5

8

9

*BNSF Railway Co. v. Cal. Dep't of Tax & Fee Admin.*
    904 F.3d 755 (9th Cir. 2018)............................................................................................. 4

10

11

*Bova v. City of Medford*
    564 F.3d 1093 (9th Cir. 2009)........................................................................................... 2

12

*Cal. Dump Truck Owners Ass'n v. Nichols*
    No. 2:11-cv-00384, 2012 WL 273162 (E.D. Cal. Jan. 30, 2012) ........................................ 5

13

14

*Cal. Tow Truck Ass'n v. San Francisco*
    807 F.3d 1008 (9th Cir. 2015)........................................................................................... 4

15

16

*Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*
    563 F. Supp. 2d 1158 (E.D. Cal. 2008).............................................................................. 2

17

*Crete Carrier Corp. v. EPA*
    363 F.3d 490 (D.C. Cir. 2004) ........................................................................................... 2

18

19

*CTA v. S. Coast Air Qual. Mgmt. Dist.*
    No. 2:21-cv-06341, 2023 WL 9622548 (C.D. Cal. Dec. 14, 2023)...................................... 5

20

21

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*
    541 U.S. 246 (2004)......................................................................................................... 3

22

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*
    498 F.3d 1031 (9th Cir. 2007)........................................................................................... 6

23

24

*Grayned v. City of Rockford*
    408 U.S. 104 (1972)...................................................................................................... 6, 7

25

26

*Exxon Corp. v. Governor of Maryland*
    437 U.S. 117 (1978) ....................................................................................................... 10

27

*In re Murray Energy Corp.*
    788 F.3d 330 (D.C. Cir. 2015) .......................................................................................... 1

28

Defendant's Reply in Support of Motion to Dismiss (2:23cv2333)

**TABLE OF AUTHORITIES**
(continued)

Page

*K.V. Mart Co. v. United Food & Com. Workers Int'l Union, Loc. 324*
    173 F.3d 1221 (9th Cir. 1999)............................................................................ 3, 4

*Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*
    627 F.2d 1095 (D.C. Cir. 1979) ............................................................................ 4

*Motor & Equip. Mfrs. Ass'n v. Nichols*
    142 F.3d 449 (D.C. Cir. 1998) ............................................................................ 10

*Nat'l Pork Producers Council v. Ross*
    598 U.S. 356 (2023)............................................................................................. 9

*Ohio v. EPA*
    98 F.4th 288 (D.C. Cir. 2024) .............................................................................. 2

*Puente Arizona v. Arpaio*
    821 F.3d 1098 (9th Cir. 2016)............................................................................... 5

*Rocky Mtn. Farmers Union v. Corey*
    719 F. Supp. 2d 1179 (E.D. Cal. 2010).................................................................. 5

*Rosenblatt v. City of Santa Monica*
    940 F.3d 439 (9th Cir. 2019)................................................................................. 9

*Rowe v. New Hampshire Motor Transp. Ass'n*
    552 U.S. 364 (2008)......................................................................................... 5, 6

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*
    65 F.4th 1012 (9th Cir. 2023)................................................................................ 2

*U.S. v. Salerno*
    481 U.S. 739 (1987)......................................................................................... 5, 9

*Warth v. Seldin*
    422 U.S. 490 (1975) ............................................................................................ 3

**STATUTES**

42 U.S.C. § 7511a(c)(4)(B)........................................................................................ 3

42 U.S.C. § 7543(b)(1)............................................................................................... 2

42 U.S.C. § 7543(b)(3)............................................................................................. 10

42 U.S.C. § 7607(b)(1)............................................................................................... 1

**TABLE OF AUTHORITIES**
(continued)

**Page**

49 U.S.C. § 14501(c)(2) .................................................................................................. 5

**REGULATIONS**

Cal. Code Regs., tit. 13, § 2013.5(e)(2) ........................................................................... 8

Cal. Code Regs., tit. 13, § 2015.3(c)(1)(A)-(E) ............................................................... 7

Cal. Code Regs., tit. 13, § 2015.3(c)(2)(B) ..................................................................... 7

Cal. Code Regs., tit. 13, § 2016(a) .................................................................................. 2

**FEDERAL REGISTER**

88 Fed. Reg. 33,830 (May 25, 2023) ............................................................................... 3

iv

**INTRODUCTION**

Plaintiff California Trucking Association (CTA) challenges several parts of the Advanced Clean Fleets (ACF) regulation adopted by the California Air Resources Board (CARB).  But nothing in CTA's opposition cures any of the myriad defects in the Complaint.  CTA cannot establish this Court's jurisdiction over its Clean Air Act (CAA) Section 209 preemption claim by asserting a different and wholly speculative claim in its brief.  CTA identifies no allegations in the Complaint that support its claim against ACF's 2036 sales requirements.  Further, CTA cannot state a CAA Section 246 preemption claim because that section has no preemptive effect anywhere, much less in California where it is inoperative.  CTA also cannot state a preemption claim under the Federal Aviation Administration Authorization Act (F4A) both because that Act did not impliedly repeal the provision of the CAA that permits California to regulate new motor vehicle emissions and because courts have already rejected the kinds of facts alleged as insufficient to support an F4A claim.  CTA's void-for-vagueness claim also fails because CTA itself clearly understands ACF's requirements and has not identified either a cognizable legal theory or sufficient factual allegations for any challenge to ACF's exemptions and extensions.  Finally, CTA's dormant Commerce Clause claim must be dismissed because CTA has not alleged facts that could establish ACF will impede the flow of interstate goods.

**ARGUMENT**

**I.    THE COURT LACKS JURISDICTION OVER CTA'S CAA SECTION 209 CLAIM**

This Court lacks jurisdiction over Plaintiffs' claim under CAA Section 209.  ECF 21-1 (MTD) 6:20-7:7.  The Complaint alleges that EPA cannot waive Section 209 preemption.  Compl. ¶¶ 57-62.  That is not a question this Court can resolve.  EPA is not a party to this case.  And, even if it were, the CAA does not authorize courts to "to prevent EPA from" taking final action.  *In re Murray Energy Corp.*, 788 F.3d 330, 334 (D.C. Cir. 2015).  Judicial review of EPA's *final actions* is available, *id.*, but only in the appropriate Court of Appeals, 42 U.S.C. § 7607(b)(1).  This Court cannot predetermine the outcome of EPA's waiver proceeding.[1]

---

[1] CTA cannot shift its burden to establish jurisdiction to Defendant by purporting to respond to a mootness argument Defendant did not make.  ECF 24 (Opp.) 3:13-24.  Defendant asserts there is no ripe dispute this Court can resolve, not that a dispute has become stale.

1

1     CTA now claims there is a dispute over enforcement actions CARB might take *if the*

2   *waiver is granted*.  Opp. at 3:3-12.  This is not the dispute alleged in the Complaint.  *E.g.*, Compl.

3   ¶ 56 ("CARB cannot enforce ACF until it has a waiver.").  This dispute is also unripe because it

4   is "contingent upon two events"—a waiver grant and particular enforcement actions—that may

5   not occur.  *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009).[2]  In any event, if EPA

6   waives Section 209 preemption, there will be—by definition—no Section 209 preemption claim

7   for CTA to salvage.  42 U.S.C. § 7543(b)(1).

8   **II.    ALL CLAIMS AGAINST THE 2036 SALES REQUIREMENT SHOULD BE DISMISSED**

9     CTA has alleged no facts that, if proven, would establish standing to challenge the 2036

10  Sales Requirement.  This requirement applies to vehicle manufacturers, not to CTA or its

11  members.  Cal. Code Regs., tit. 13, § 2016(a).  Accordingly, "any injury to [CTA or its members]

12  hinges on actions taken by manufacturers," and CTA bears the "substantially more difficult"

13  burden "of adduc[ing] facts showing that those [third-party] choices have been or will be made in

14  such manner as to produce causation and permit redressability of injury."  *Ohio v. EPA*, 98 F.4th

15  288, 300 (D.C. Cir. 2024) (internal quotation marks omitted).  Most heavy-duty vehicle

16  manufacturers have agreed to meet the 2036 Sales Requirement *regardless of its legal status*.

17  ECF 22-2, Appendix B at ii.[3]  To establish redressability, CTA must therefore allege sufficient

18  facts about how the *remaining* "manufacturers would respond" to invalidation of the 2036 Sales

19  Requirement.  *Crete Carrier Corp. v. EPA*, 363 F.3d 490, 494 (D.C. Cir. 2004).  While the facts

20  alleged in the Complaint need not establish standing is "literally certain," *San Diego Cnty. Credit*

21  *Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1025 (9th Cir. 2023), they must

22     [2] Another court in this district has already rejected similar arguments, concluding that
what CTA characterizes as threats of "retroactive[] enforce[ment]" (Opp. 3:5-6) are simply
23  statements of what CTA should have "assumed … all along—California intends to enforce its …
regulations if and when it can"—i.e., after EPA grants a waiver.  *Cent. Valley Chrysler-Jeep, Inc.*
24  *v. Goldstene*, 563 F. Supp. 2d 1158, 1165 (E.D. Cal. 2008).  CTA's reliance on the general
prohibition against retroactive rulemakings is misplaced.  Opp. 3:7.  CARB's September 2023
25  adoption of rules applicable in 2024 (at the earliest) is hardly retroactive.  *See also Cent. Valley*
*Chrysler-Jeep*, 563 F. Supp. 2d at 1169 ("There is no suggestion by any party that Plaintiffs were
26  unaware of [California's] regulations at the time of their adoption, if not before.").
     [3] Far from being "premised on the need to comply with ACF," Opp. 4:22, this agreement
27  applies regardless of such a need—*e.g.*, even if a court concludes CARB lacks "authority to
implement" the 2036 Sales Requirement, ECF 22-2, Appendix B at i.
28

Defendant's Reply in Support of Motion to Dismiss (2:23cv2333)

1  establish "a substantial probability" that CTA's success here would lead vehicle manufacturers to

2  change conduct in ways that provide redress, *Warth v. Seldin*, 422 U.S. 490, 504 (1975). Yet the

3  Complaint does not identify the relevant manufacturers, much less allege facts indicating they

4  would produce different vehicles in 2036 if CTA prevailed here.  CTA cannot establish standing

5  simply by pointing to a regulatory requirement *applicable to other parties a decade from now*.[4]

6  **III.   CTA's Claim under CAA Section 246 Should Be Dismissed**

7       CTA's claim that CAA Section 246 preempts ACF fails because Section 246 is not among

8  the CAA provisions given preemptive effect by Congress.  MTD 9:8-16.  Section 246 is also

9  optional, 42 U.S.C. § 7511a(c)(4)(B), and California is among the States that have "opt[ed]-out,"

10  88 Fed. Reg. 33,830 (May 25, 2023); *see also* MTD 9:24-10:4.  CTA's unsupported claim that

11  "all states must follow" Section 246 cannot change that.  Opp. 6:28.  Section 246 has no

12  preemptive force in California for *both* reasons, and this claim should be dismissed.

13       CTA continues to misread *Engine Manufacturers Ass'n v. South Coast Air Quality*

14  *Management*, 541 U.S. 246 (2004).  In that case, the Court observed simply that Section 246's

15  "specifications" apply to "fleet purchasing restrictions" *promulgated under that section*.  *Id.* at

16  248.  CTA is thus plainly incorrect when it asserts that Section 246's specifications apply to

17  "[*a]ny* fleet purchase standard" promulgated by a State.  Opp. 5:21 (emphasis added).  To the

18  contrary, the Court expressly distinguished Section 246's "*federally approved*" fleet requirements

19  from the "*state*-imposed standards" that are preempted by Section 209(a).  *Engine Mfrs. Ass'n*,

20  541 U.S. at 257 (emphasis original).  In other words, the Court recognized both that Section 246's

21  specifications are particular to the (optional) program it establishes and that it is *Section 209(a)*,

22  not Section 246, that can preempt fleet purchase mandates like the one at issue in that case.

23       CTA's theory that Section 246 does the exact same thing as Section 209(a)—namely,

24  preempt fleet purchase requirements that impose emission standards—runs afoul of the canon

25  against "interpret[ing] a provision in a manner that renders other provisions of the same statute

26  inconsistent, meaningless or superfluous." *K.V. Mart Co. v. United Food & Com. Workers Int'l*

27

28       [4] Even if it had standing, CTA concedes it has no Due Process claim against the 2036
Sales Requirement, *see* Opp. 4:2-15; and its other claims fail for the reasons described herein.

Defendant's Reply in Support of Motion to Dismiss (2:23cv2333)

1  *Union, Loc. 324*, 173 F.3d 1221, 1225 (9th Cir. 1999).  The waiver power set out in Section

2  209(b), which is "coextensive with" the scope of Section 209(a), further undermines CTA's

3  interpretation.  *Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1107 (D.C. Cir. 1979).

4  Indeed, on CTA's account, the Clean Air Act works as follows: Section 209(a) preempts ACF;

5  Section 209(b) requires EPA to waive that preemption (absent certain circumstances); but then

6  Section 246 impliedly reinstates that preemption.  Congress did not draft the CAA to put Section

7  246 at such cross-purposes with Section 209.[5]  The better reading is clear from the plain text:

8  Section 246 simply sets out the requirements for its particular federal program (from which States

9  may opt out).  It has no preemptive effect.

10  **IV.   CTA'S F4A CLAIM SHOULD BE DISMISSED**

11        CTA's F4A claim fares no better because the F4A does not preempt state emission

12  regulations expressly protected by the CAA and because CTA has not stated, and cannot state,

13  either a facial or as-applied challenge under the F4A.  CTA's counter-arguments are meritless.

14        CTA argues that the F4A's preemption provision impliedly repealed CAA Section 209(b)'s

15  protection of California truck emission standards.  Opp. 7:11-13.  But CTA identifies nothing in

16  the F4A or its legislative history that could overcome the strong presumption against implied

17  repeal.  MTD 11:8-22.  In fact, far from demonstrating congressional intent to preempt emission

18  regulations fostered in other statutes, the F4A reflects a "slender Congressional goal of addressing

19  *economic* authority" over motor carriers.  *Cal. Tow Truck Ass'n v. San Francisco*, 807 F.3d 1008,

20  1023 (9th Cir. 2015) (internal quotation marks omitted).  Moreover, when one statute might

21  appear to preempt what another protects, the Ninth Circuit harmonizes the two by preserving

22  Congress's choice to protect specified state regulations.  *BNSF Railway Co. v. Cal. Dep't of Tax*

23  *& Fee Admin.*, 904 F.3d 755, 761-62 (9th Cir. 2018).  None of CTA's cases suggests a different

24  analysis here.  *See* Opp. 7:14-19.  CTA relies on two district court decisions that predate *BNSF*,

25

26       [5] Far from rejecting the argument that CAA-authorized regulations are protected from preemption under other statutes, Opp. 6:15-19, the Ninth Circuit has repeatedly indicated that other federal statutes "generally do[] not preempt" state regulations approved by EPA under the

27  CAA, *Ass'n of Am. Railroads v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1098 (9th Cir. 2010).  In any event, this case law does not suggest, much less establish, that one section of a

28  federal statute supplants another, as CTA would have it.

Defendant's Reply in Support of Motion to Dismiss (2:23cv2333)

1    but neither harmonizes two different Acts of Congress.  *Rocky Mtn. Farmers Union v. Corey*, 719

2    F. Supp. 2d 1179, 1196 (E.D. Cal. 2010) addressed whether a statute created a *constitutional*

3    *exemption*, not how two potentially conflicting congressional choices should be harmonized.  And

4    *Cal. Dump Truck Owners Ass'n v. Nichols*, No. 2:11-cv-00384, 2012 WL 273162, *4 n.3 (E.D.

5    Cal. Jan. 30, 2012) avoided harmonization because the F4A claim failed on other grounds.  Nor is

6    harmonization addressed by decisions merely holding that there is no general "public health

7    exception" to F4A preemption, *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 373-

8    74 (2008), even for laws that might reduce emissions, *Amer. Trucking Ass'ns, Inc. v. Los Angeles*,

9    559 F.3d 1046, 1055-56 (9th Cir. 2009).[6]  In the end, CTA's only case on point, Opp. 14:18-21,

10   *rejected* an implied repeal argument and concluded that the F4A *did not* "disrupt the balance of

11   federal and state authority over pollution control that was established in [another section of] the

12   CAA."  *CTA v. S. Coast Air Qual. Mgmt. Dist.*, No. 2:21-cv-06341, 2023 WL 9622548, *29

13   (C.D. Cal. Dec. 14, 2023).[7]  The same is true here:  the F4A did not impliedly repeal CAA

14   Section 209(b)'s express protection for California's truck emission standards.

15         Even if CTA's implied-repeal theory were cognizable, CTA's facial F4A claim would still

16   fail because CTA does not and cannot dispute that many applications of ACF are not preempted.

17   MTD 12:1-12.  CTA erroneously argues that the *Salerno* rule for facial challenges—from *U.S. v.*

18   *Salerno*, 481 U.S. 739 (1987)—does not apply to preemption cases, citing a district court decision

19   from 2011 and an F4A case that CTA concedes did not address the issue.  Opp. 8:26-9:8.

20   However, the Ninth Circuit applies *Salerno's* "no set of circumstances" test to facial preemption

21   challenges.  *Puente Arizona v. Arpaio,* 821 F.3d 1098, 1104 (9th Cir. 2016); *see also CTA*, 2023

22   WL 9622548, at *17 n.7.  CTA also argues that even if *Salerno*'s test does apply, CTA does not

23   have "to show that every *provision*" of ACF is invalid.  Opp. 9:17 (internal quotation marks

24   omitted, emphasis added).  True enough, but as its own case makes clear, CTA does have to

25
         _____

26         [6] The portion of *American Trucking* cited by CTA addressed an issue not currently before
     the Court, *i.e.*, whether the statute's "safety regulatory authority" exception, 49 U.S.C. §
     14501(c)(2), applied in that case.

27         [7] CTA again misstates the holding of *Association of American Railroads*, 622 F.3d at
     1098, which declined to harmonize a *local* rule with a federal statute.  Opp. 6, 7.  That case has no

28   bearing on how two *federal* statutes—the CAA and F4A—should be harmonized.

Defendant's Reply in Support of Motion to Dismiss (2:23cv2333)

1    allege facts "to show that there can be no valid application of a particular challenged provision."

2    *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1049 (9th Cir. 2007).

3    The Complaint contains no such allegations for any provision.

4         Indeed, the Complaint does not allege facts that could support *any* F4A claim, either facial

5    or as-applied. CTA cannot allege that ACF directly regulates the preempted domain of "prices,

6    routes, or services." It argues instead that ACF indirectly affects those "outputs" by regulating an

7    "input"—*e.g.,* vehicles. *See* MTD 12:15-18; Opp. 6:22-7:6.[8] But none of the alleged indirect

8    effects differs in kind from the effects of other regulations that survived preemption. MTD 13.

9    CTA's allegations are also too conclusory to state a claim. For example, CTA claims that limited

10   charging infrastructure will affect motor carriers' routes, Opp. 12:15, but never alleges that such

11   infrastructure will be unavailable *when needed* on a given route. MTD 13:17-19. ACF merely

12   speeds a gradual transition to ZEVs. CTA cannot state a claim based on the alleged effects of this

13   acceleration without any details about what the transition—which is already underway and

14   backed by significant private and public investment—will look like over the relevant timeframes.

15   **V.    CTA'S DUE PROCESS CLAIM SHOULD BE DISMISSED**

16        Defendants demonstrated that CTA has failed to state a void-for-vagueness challenge to

17   ACF's requirements—the provisions of the regulation that require or prohibit particular conduct.[9]

18   MTD 14:9-14. Defendants also showed that CTA cannot bring a facial challenge to ACF's

19   exemptions and extensions, lacks standing for any as-applied challenge to those provisions, and,

20   in any event, failed to state such a challenge. *Id.* at 14:16-17:14. Finally, Defendants

21   demonstrated that CTA failed to state an arbitrary enforcement claim. *Id.* at 17:17-18:7. CTA's

22   responses do nothing to undermine these demonstrations.

23        CTA concedes that it must allege facts that, if proven, would show ACF's "'*prohibitions*

24   are not clearly defined.'" Opp. 15:26-16:1 (quoting *Grayned v. City of Rockford,* 408 U.S. 104,

25

26        [8] The fact that a truck may be more expensive than certain emission control devices does not turn a truck into a "service" performed for a customer, Opp. 13:20-14:10, like verification of receipt upon delivery, *Rowe,* 552 U.S. at 372.

27        [9] CTA does not challenge the state and local government fleet requirements, MTD 3 n.2, or the 2036 Sales Requirement under this theory, Opp. 4:2-15.

28

1    108 (1972) (emphasis added)).  CTA can hardly allege such facts, given that it understands ACF's

2    prohibitions well enough to produce a presentation to "educate its members on rule compliance."

3    *Id.* at 15:17.  Nor does CTA identify any such allegations in its Complaint, pointing instead to

4    allegations concerning ACF's exemptions and extensions.  *Id.* at 15:22-24 (citing Compl. ¶ 37).[10]

5    CTA then argues that purported uncertainty about whether a regulated entity "will qualify for

6    exemptions or extensions" somehow renders ACF's requirements vague.  Opp. 15:18-16:1.  But

7    that's a logical fallacy.  When someone applies for an extension to file a tax return, uncertainty

8    about whether or when the extension may be granted does not make either the original deadline or

9    amount owed unclear.  The same is true here.  CTA has not stated, and cannot state, a Due

10   Process challenge to any of ACF's *requirements*—a failing that is fatal to this claim.

11          Even if a void-for-vagueness challenge to ACF's extensions and exemptions could be

12   stated, CTA fails to establish it has stated any such facial claim.  CTA again implies it need not

13   allege facts that, if proven, would demonstrate impermissible vagueness in all applications.  Opp.

14   16:2-13.  But CTA cites no precedent undermining this well-established test.  *See* MTD 14:18-22.

15   Instead, CTA attempts to satisfy this test by arguing that it will be unclear, in all instances,

16   whether a project or delivery delay is the result of a natural disaster.  Opp. 6:6-13.  That argument

17   cannot be credited.  For example, if a hurricane destroys a manufacturing plant that was going to

18   produce ZEVs ordered by one of CTA's members, a delay in the receipt of the ordered vehicles

19   would be a result of a natural disaster.  *See* Cal. Code Regs., tit. 13, § 2015.3(c)(1)(A)-(E).[11]

20          CTA's other attempts to save its facial claim fare no better.  At bottom, CTA claims the

21   extensions and exemptions are vague, in all applications, simply because applicants will not *know*

22   they have qualified until "CARB itself has reached that conclusion."  Opp. 16:18.  If that were

23   sufficient to state a facial void-for-vagueness challenge, no statute or regulation could ever

24

25          [10] A Due Process claim cannot be established by the mere submission of comments during
     a rulemaking raising questions about the clarity of certain provisions.  Opp. 15:3 (citing
26   Complaint at 24 n.4).  If it could, anyone could manufacture such a claim about any regulation.
            [11] CTA also argues that a fleet owner will be unable to determine how many ZEVs could
27   be supported by existing electricity supply.  Opp. 17:1-7 (purporting to challenge Cal. Code
     Regs., tit. 13, § 2015.3(c)(2)(B)).  But CTA cannot explain why a fleet owner in possession of the
28   specifications of its existing electricity supply and the vehicles it seeks to add to its fleet would be
     unable to do so.

Defendant's Reply in Support of Motion to Dismiss (2:23cv2333)

provide an extension or exemption requiring verification or final determination by an

implementing agency.  There is no constitutional requirement that regulated parties must

*themselves* be able to determine definitively that they qualify for an extension or exemption.

CTA then changes course, asking this Court to "deem this claim an as-applied challenge" to

the extensions and exemptions.  Opp. at 16 n.10.  CTA claims it has standing to bring such a

claim, despite its failure to allege any of its members has a concrete plan to utilize any identified

extension or exemption, because the alleged vagueness makes it "impossible" to develop such a

plan.  *Id.*  CTA never explains why this is so.  In fact, CTA itself alleges ZEVs "are not

commercially available through all classes," Compl. ¶ 84, and a fleet owner expecting to purchase

any such vehicle could anticipate it might apply for a "ZEV Purchase Exemption" due to vehicle

unavailability.  At bottom, CTA is arguing it is impossible for its members to know what kinds of

vehicles they may buy or whether those kinds of vehicles are available as ZEVs.[12]  That is

implausible and, in any event, is not alleged in the Complaint.

CTA has also failed to state any as-applied claim.  CTA's opposition identifies no

allegations describing particular applications of the extensions or exemptions at all, much less any

particular applications that could support a vagueness claim.  Instead, CTA doubles-down on the

theory that the extensions or exemptions must be unconstitutional because applicants for them

will not know whether they are approved until CARB acts on their applications.  Again, the

existence of qualifications that must be verified by the implementing agency is not a

constitutional defect; and the fact that CARB's approval is required to utilize these provisions

does not save an as-applied claim any more than it saves a facial one.

Finally, CTA effectively concedes that it has not stated a Due Process claim that ACF

leaves CARB with unconstitutionally uncabined enforcement discretion.  Specifically, CTA

asserts "[t]he question is not whether CARB can selectively enforce" ACF.  Opp. 17:13-14.  CTA

does assert that "the applicability of an exemption is determined only after a violation has

occurred." *Id.* at 17:16-17.  But that allegation appears nowhere in the Complaint and, in any

---

[12] Fleets need not wait for CARB to prepare a list of unavailable vehicles to make this
determination, *see* Opp. 16 n.10., because regulated parties may qualify for this exemption
regardless of the existence of that list, MTD 17:5-10; Cal. Code. Regs., tit. 13, § 2013.5(e)(2).

1    event, is incorrect.  For example, if a regulated party plans to purchase a new vehicle and an

2    appropriate ZEV vehicle is not available, that party may apply for the relevant exemption *before*

3    they add a new conventional vehicle to their fleet (which could violate ACF).  In essence, CTA

4    seems to think regulated parties must be able to obtain extensions and exemptions designed to

5    address conditions beyond a regulated party's control *before the conditions warranting them*

6    *materialize* (or immediately thereafter).  The Constitution does not require that.

7    **VI.    CTA'S DORMANT COMMERCE CLAUSE CLAIM SHOULD BE DISMISSED**

8           CTA's efforts to save its dormant Commerce Clause claim also fail.  CTA (again) disputes

9    that it must allege facts sufficient to establish there are no valid applications of ACF in order to

10   state a facial challenge.  Opp. 18 n.13.  But (again) Ninth Circuit precedent is clear:  "To succeed

11   on her facial challenge under the dormant Commerce Clause, [plaintiff] must establish 'that no set

12   of circumstances exists under which the [regulation] would be valid.'"  *Rosenblatt v. City of*

13   *Santa Monica*, 940 F.3d 439, 444 (9th Cir. 2019) (quoting *United States v. Salerno*, 481 U.S. 739,

14   745 (1987)); *see also Ass'n of Am. Railroads v. Randolph*, No. 23-CV-01154-DJC-JDP, 2024 WL

15   664359, at *10 (E.D. Cal. Feb. 16, 2024).  The Complaint's allegations cannot meet this test.

16   CTA does not argue otherwise.  Nor does CTA ever claim it brings an as-applied challenge.[13]

17   This claim should be dismissed with prejudice.

18          CTA also fails to state any claim—whether facial or as-applied.  As CTA acknowledges,

19   ACF does not contravene the dormant Commerce Clause's core, anti-protectionism principle.

20   Opp. 18:1-2 ("CTA has not alleged that ACF is discriminatory").  Thus, to prevail, CTA would

21   have to establish that "the Commerce Clause itself pre-empts [the] entire field" of motor vehicle

22   emission regulation and that "a lack of national uniformity would impede *the flow* of interstate

23   goods."  *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 380 n.2 (2023).  But Congress

24

25          [13] Rather than attempt to identify specific applications of particular regulatory provisions
     that allegedly violate the dormant Commerce Clause, CTA's opposition embraces the same non-
     specific approach as the Complaint, referring only to the "ACF" as a whole.  Different provisions
26   of ACF apply to different parties.  For example, the drayage requirements apply only to drayage
     fleets.  And the 2036 Sales Requirements apply only to vehicle manufacturers.  CTA cannot
27   identify particular unconstitutional applications of a multi-faceted regulation without identifying
     *which* provision it challenges and *to whom* that provision applies in an allegedly unconstitutional
28   manner.

                                                       9

expressly chose *not to preempt* this entire field, thereby rejecting the need for national uniformity. In fact, the CAA expressly contemplates *two* regulatory programs for new motor vehicle emissions. *E.g.*, 42 U.S.C. § 7543(b)(3) (contemplating distinct "state standards" and "Federal standards"). Accordingly, "new motor vehicles must be either federal cars designed to meet EPA's standards or California cars designed to meet California's standards." *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 453 (D.C. Cir. 1998) (internal quotation marks omitted). CTA's claim founders as a matter of law.

The Complaint also does not allege any facts that, if proven, could establish that ACF will impede the flow of interstate goods. At most, CTA alleges that its members may raise their prices due to the alleged costs of complying with ACF. Compl. ¶¶ 46a, 46b. But the Supreme Court and Ninth Circuit have both consistently rejected such compliance costs (and their potential pass-through effects on prices) as sufficient to state a dormant Commerce Clause claim—even when the alleged costs are large and even when the costs will be borne by interstate transportation companies. MTD 19:13-22. CTA also alleges the "*potential* [for] loss of jobs due to the transfer of goods to other U.S. ports" and alludes to "*potential*" and unidentified "supply chain disruptions." Compl. ¶ 49 (emphasis added); *see also* Opp. 18:7-8. These allegations are both too speculative and too conclusory to state a claim. Moreover, the Supreme Court rejected a dormant Commerce Clause claim based on the prospect that "[s]ome refiners may choose to withdraw entirely from the Maryland market." *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 127 (1978). CTA does not explain how its even more speculative and vague "potential" effects could support a claim. In the end, CTA has not alleged any facts that could establish that a given application of a particular ACF provision would do more than impose compliance costs. That does not state a claim that any application would impede the flow of interstate goods.

## CONCLUSION

Defendant respectfully requests the Court dismiss the Complaint with prejudice.

1   Dated:  May 8, 2024                                Respectfully submitted,

2                                                      ROB BONTA
                                                       Attorney General of California
3                                                      MYUNG J. PARK
                                                       Supervising Deputy Attorney General
4

5

6                                                      */s/ M. Elaine Meckenstock*
                                                       M. ELAINE MECKENSTOCK
7                                                      Deputy Attorney General
                                                       *Attorneys for Defendant Steven S. Cliff, in*
8                                                      *his official capacity*

9   OK2023402362
    91796184.docx
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        11